1    **Michael N. Sofris, Esq., SBN 170018**
  **468 North Camden Drive, Suite 200**

2    **Beverly Hills, California  90210-4507**
  **Telephone (310) 229-4505**

3

4    **Proposed Attorneys for Debtor In Possession**
  **LAX Royal Airport Center, LP**

5

6

7

8            **UNITED STATES BANKRUPTCY COURT**

9             **CENTRAL DISTRICT OF CALIFORNIA**

10                **LOS ANGELES DIVISION**

11

12  **In Re:**                                      **Case No.:11-12333-BB**

13    **LAX ROYAL AIRPORT CENTER, LP**       **Chapter 11**

14                                    **Emergency Motion For Use Of Cash Collateral; Memorandum of Points and**

15                                    **Authorities; and Declaration(s) of Irene Chang and Michael N. Sofris In Support**

16                **Debtor.**          **Thereof**

17

18                                    **Hearing Date:  TBD**
      **Hearing Time: TBD**

19                                    **Courtroom: 1482**

20

21       **TO THIS HONORABLE COURT,  THE UNITED STATES TRUSTEE,**

22

23  **MSCI 2006-IQ11 WEST CENTURY LIMITED PARTNERSHIP, ALL PARTIES IN**

24  **INTEREST AND THEIR ATTORNEYS OF RECORD:**

25         **PLEASE TAKE NOTICE** that at a date, time and place to be set, notice of which will

26  be provided to you, the undersigned Debtor In Possession will and does hereby move for an order

27

28  _____
                      Motion To Use Cash Collateral

000001

1  authorizing use of the rental income generated by the operation of a commercial real property

2  commonly known as 5933 West Century Boulevard, Los Angeles, California  90045 (the

3  "Property") , to operate and preserve the property and to protect the security, health and safety of

4  the tenants\occupants of the property.

5       The motion is and will be made upon the grounds that sufficient equity exists in the

6  Property to adequately protect the trust deed holder without recourse to rents as additional

7  collateral and will be based on this notice, the memorandum of points and authorities submitted

8  herewith, including the declaration of  Irene Chang and Michael N. Sofris and upon such other

9  matters as the Court might consider at the time of hearing.

10       Procedure for filing opposition to the relief sought will be provided at such time as a

11  hearing is set.

12                               /s/ Michael N. Sofris

13  Dated: February 9, 2011

                           _____

14                             Michael N. Sofris, Esq.
                           Proposed Attorneys for Chapter 11 Debtor
                           In Possession

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Motion To Use Cash Collateral

2

000002

MEMORANDUM OF POINTS AND AUTHORITIES

## I.  FACTS

This Chapter 11 case was commenced by the filing of a voluntary petition on January 11, 2011.

The major asset of this estate is a commercial property commonly known as 5933 West Century Boulevard,  Los Angeles, California  90045 (the "Property") located adjacent to the Los Angeles Airport.  The Property is currently used as an office building. The Property generates income of approximately $130,000.00 - $200,000.00 per month from tenants who rent office(s) at the building.

On or about February 1, 2011, the Debtor In Possession by and through its proposed counsel, Michael N. Sofris sought authorization from MSCI 2006-IQ11 West Century Limited Partnership ("MSCI")  to use a portion of the revenues the Debtor In Possession generates from its rental income to pay the Debtor In Possession's monthly operating expenses including, but not limited to, utility costs, security, insurance, engineering, maintenance and property management costs.

As of February 8, 2011, MSCI has not agreed to a stipulation to use cash collateral although the Debtor's counsel has made repeated and urgent request that it do so.

On February 7, 2011,  the buildings security company abruptly quit due to non-payment of its weekly fees.   The Heating and Air Conditioning System is in urgent need of repairs or it will break down.  Insurance and utility payments have not been made.

The Property has a fair market value of $16 million.  The liens and encumbrances on the Property total $8,476,615.73.  There is more than sufficient equity in the Property to adequately protect the trust deed and lien holders without the need to sequester the cash collateral.

The Debtor In Possession therefore seeks an order authorizing it to pay the monthly operating costs and expenses set forth in attached Exhibit 3 from its rental income.

---

Motion To Use Cash Collateral

000003

1        Further, the Debtor In Possession request that the court's order authorizing it to

2   use the rental income be made retroactive to the petition date of January 19, 2011.

3        Because all of the expenditures were and will be for the benefit of the Lender's

4   collateral and because the Property itself furnishes complete adequate protection without any

5   necessity to look to the rental income as additional collateral, the Debtor In Possession would

6   expect to receive the consent requested.

7        Nevertheless,  MSCI has refused and continues to refuse to respond to the

8   Debtor's reasonable request for permission to use the rental income to maintain the Property.

9   perhaps because MSCI sees that it can make a huge windfall if it forecloses on the property.

10       The Debtor In Possession has not yet received MSCI's consent, and therefore is

11  subject to complaint that it is in violation of 11 U.S.C. § 363(c) (2) although any alleged

12  transgression of that section should be weighed against the nightmare scenario of loss of life or

13  limb or property that would occur if the Property were not maintained, protected and managed. as

14  well as the economic effect to this estate and all parties in interest if some unforeseen even

15  destroyed the property.

16

17  **II.  AUTHORITIES**

18  1.      11 U.S.C. § 363(c)(2)(B) provides that the Court, after notice and a hearing, may

19  authorize use of cash collateral.

20  2.      The often cited case of In re Oak Glen R-Vee, 8 B.R. 213 (Bkrtcy. CD. Ca. 1981)

21  is clear authority that (1) even in the absence of any consent to use cash collateral the court may

22  grant both retroactive and prospective use of rents under 11 U.S.C. § 363(c)(2) where, as here,

23  the property generating the rents provides the lenders with adequate protection and the rents are

24  used for the benefit of the Property.  In  the Oak Glen R-Vee case,  the debtor operated a

25  recreational vehicle park and filed for Chapter 11 protection on March 5, 1980 and continued to

26  use rents from park tenants to operate.  On June 11, 1980 the lender filed a complaint to

27

28  _____

Motion To Use Cash Collateral

4

000004

1  sequester rents, which the court tried while the debtor continued to operate.

2  The court rendered its decision on January 19, 1981, some six months later and in its decision, at

3  page 216, retroactively authorized the debtor's use of cash collateral, given the value of the

4  lender's collateral:

5          "Under 11 U.S.C. § 363(c) (2) the court, after notice of and hearing, may

6  authorize use of cash collateral.  This court is of the view that. . . . .the debtor should be

7  authorized nunc pro tunc  as of June ll, 1980, to use the rents, income, issues and profits from its

8  operation." The court found a non-operating value of the collateral of at least $1,000,000.00 and

9  a debt of approximately $525,000.00.

10

11  ### III. CONCLUSION

12          For the reasons set forth, the Court should approve the use of the DIP's rental

13  income from its operation and management of the Property for those purposes set forth in Exhibit

14  3.

15                                       /s/ Michael N. Sofris

16  Dated: February  8, 2011    _____

17                                  Michael N. Sofris
                                Proposed Attorneys for Chapter 11
                                Debtor In Possession, LAX Royal

18                                  Airport Center, LP

19

20

21

22

23

24

25

26

27

28  _____
                         Motion To Use Cash Collateral

000005

## DECLARATION OF IRENE CHANG

I, Irene Chang, declare and state:

1.          I am the operations manager for the Chapter 11 Debtor In Possession LAX Royal Airport Center, LP  ("DIP"), I am over the age of 18 and a resident of the County of Los Angeles, State of California.

2.          This Chapter 11 case was commenced by the filing of a voluntary petition on January 19, 2011.

3.          The major asset of the bankruptcy estate is a commercial property commonly known as 5933 West Century Boulevard,  Los Angeles, California  90045 (the "Property") located adjacent to the Los Angeles Airport.  The Property is used as an office building. The Property generates income of approximately $130,000.00 - $200,000.00 per month from tenants who rent office(s) in the building.

4.           In Schedule A of its bankruptcy petition, the Debtor valued the fair market value of the Property at $16 million.  I am informed and believe that this opinion was based on the current market value of similar Properties in the LAX - Century Boulevard corridor.    A copy of the Debtor In Possession's Schedule A filed in this proceeding is attached as Exhibit 1.

7.          On January 20, 2011, MSCI 2006-IQII West Century Limited Partnership ("MSCI") filed a notice with the Court and served it upon the proposed counsel for the DIP claiming to have a secured interest in the cash collateral generated from the Property and demanding that the DIP sequester all rents, issues, profits, proceeds and income derived from the Property.  MSCI claims that the DIP owes it an amount in excess of $8,476,615.73.  To the extent that MSCI is an assignee of  the original lender, Morgan Stanley's secured interest in the Property, this assertion may be true.

8.          On January 20, 2011, the DIP contacted the attorneys for MSCI  and requested that they agree to let the DIP use cash collateral to pay its operating and maintenance expenses.  The DIP agreed to provide MSCI with a list of the monthly operating expenses that would be paid

Motion To Use Cash Collateral

000006

1   from cash collateral and provided said list to MSCI on or about January 31, 2011.

2   9.            I am informed and believe that MSCI's counsel forwarded the DIP's itemized list

3   of monthly operating expenses to MSCI on or about January 31, 2011, and MSCI has had

4   adequate opportunity to review and respond to the DIP's request for a stipulation to use cash

5   collateral.

6   10.          As of February 7, 2011,  MSCI has not responded to the DIP's request to use cash

7   collateral even though multiple efforts had been made to secure a stipulation.

8   11.          On February 7, 2011, the building's security company notified me that it would no

9   longer provide security services until it received payment for their services.  A copy of their notice

10   of termination of services is attached as Exhibit 2.

11   12.          On February 7, 2011, KOAR, the land lessor for the Property contacted the DIP

12   and demanded payment for its land lease.

13   13.          On February 7, 2011, I notified MSCI that the HVAC system was in dire need of

14   repairs or it would shut down and urged MSCI to, at the very least, borrow money from a third

15   party to cover these emergency expenditures.

16   14.          MSCI refuses and continues to refuse to enter into a stipulation for the use of cash

17   collateral.

18   15.          The situation at the Property has become dire.  Given that MSCI is unwilling or

19   unable to enter into a stipulation to allow the DIP to use cash collateral for maintenance and

20   operation, a Court order needs to be put in place which allows the DIP to use cash collateral to

21   maintain and operate the Property.

22   16.          A true and correct copy of the itemized expenses that the DIP is seeking court

23   permission to use cash collateral to pay on a monthly basis is attached hereto as Exhibit 3.

24   17.          I had expected MSCI to consent to these expenses because these expenses are

25   necessary to protect and preserve its collateral as well as protect the health and welfare of the

26   tenants on the Property.

27

28

---

Motion To Use Cash Collateral

000007

18.         If the DIP doesn't obtain an order permitting it to pay its monthly operating costs and expenses then the DIP would be subjecting itself to a complaint that it is  in violation of 11 U.S.C. § 363(c) (2) although any purported transgression of that section should be weighed against the nightmare scenario of loss of life or limb or property that would occur if the Property were not maintained, protected and managed and the harm that would come to the tenants of the Property if the Property is not maintained. as well as the economic effect to this estate and all parties in interest if some unforeseen event destroyed the property.

19         If called as a witness in this matter I could and would of my personal knowledge competently testify to the foregoing except for those maters averred to on information and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 8th day of February, 2011, in Los Angeles, California.

Irene Chang

Motion To Use Cash Collateral

000008

## DECLARATION OF MICHAEL N. SOFRIS

I, Michael N. Sofris, declare and state:

1.        I am an attorney at law duly licensed to practice law in the State of California and before this Court.  I am the attorney for the Debtor, LAX Royal Airport Servicing, LP ("Debtor")and I am informed and believe that the Debtor will be requesting that I be appointed as counsel for their bankruptcy estate.  If called testify, I could and would competently testify to the follows.

2.        On or about January 20, 2011, I telephoned Mark Mersel, attorney for MSCI 2006-IQII West Century Limited Partnership about the terms and conditions of a cash collateral stipulation in response to Attorney Mersel's filing of a document entitled Notice of Secured Interest.  Attorney Mersel was receptive to discuss the terms of a proposed stipulation to use cash collateral.  I advised Attorney Mersel that I would work with my client to get a list of those items that would be paid using cash collateral.

3.        On January 31, 2011,  I e-mailed a list of expenses that my client was seeking his client's permission to use cash collateral to pay.  Attorney Mersel advised me that his client was in Florida but he would send him a copy of the list.

4.        In the interim, Attorney Mersel provided me with a copy of a proposed stipulation that his firm utilizes for cash collateral stipulations.

5.        On February 4, 2011, I wrote Attorney Mersel and advised him that given that it was the end of the first week of February, we were in urgent need of a stipulation to use cash collateral so my client could manage and operate the building.  Attorney Mersel told me that he would get back to me on Monday, February 7, 2011, after speaking to his client.

6.        On February 7, 2011, I notified Attorney Mersel that my client was in dire need of a stipulation to use cash collateral because the HVAC was in need of emergency repair, the Security Company had notified my client that it would no longer provide Security Services to the building due to non-payment, and that the attorneys for the land lessor had called me asking me why the land lease had not been paid.  Attorney Mersel advised me by e-mail that he was still

Motion To Use Cash Collateral

000009

1   waiting to hear back from his client concerning the proposed stipulation.  He felt that we would

2   have a stipulation mid-morning or mid-afternoon on February 8.

3   7.          Late in the day on February 8, 2011, Attorney Sheri Kanesaka contacted me

4   because Attorney Mark Mersel was out of the office.  Attorney Kanesaka represented to me that

5   she had spoken with the Lender and they had objections to some of the items identified in the

6   Debtor's  proposed monthly budget.  I asked Attorney Kanesaka if the Lender would agree to

7   allow my client to make "emergency" disbursements pending further discussion with the Lender

8   about the items they objected to using cash collateral pay.  Attorney Kanesaka advised me that she

9   would find out if the Lender would be willing to do so.

10  8.          At approximately 4:30 p.m. on February 8, 2011 Attorney Kanseka telephoned me

11  and informed me that the Lender wanted a  "global stipulation" on all expenses and would not

12  agree to payment(s) of "emergency" items pending resolution of those items that were in dispute.

13  9.          Attorney Kanesaka requested that the Debtor provide documentation for the

14  expenses the Debtor wanted to use cash collateral to pay.

15  10.         At approximately 9:00 p.m. on February 8, 2011, the Debtor forwarded the most

16  recent monthly invoices for the expenses that were being disputed to Attorney Kanesaka.

17  11.         At 7:00 am on February 9, 2011, Attorney Kanesaka wrote me and said that her

18  client was now requesting documentation supporting the payment of monthly operating expenses

19  for the 12 months prior to the filing of the bankruptcy case.

20  12.         I wrote Attorney Kanesaka and stated that the  Debtor's operations manager would

21  go to San Francisco and get copies of the documents the Lender was requesting, but it appeared

22  from her clients request, that no stipulation would be agreed to until they had an opportunity to

23  review those records which could take several more days.  I advised Ms. Kanesaka that given the

24  circumstances at the building (loss of heating\air conditioning\security), the Debtor did not have

25  the luxury of further delays and a court order would have to be sought immediately so the

26  Debtor could continue to manage and operate the Property.

27

28  _____
                    Motion To Use Cash Collateral

000010

13.          Shortly thereafter, I received a telephone call from Attorney Mersel and Attorney Kanesaka.  They were concerned that I was running into Court without giving their client adequate time to determine whether the expenses were necessary and the budget for them proper. I advised them that I would continue working with them and their client in the hopes of reaching a stipulation resolving the matter.   However, given the lag time between requesting a hearing on a motion to use cash collateral and actually getting the motion heard by the court,  I was duty bound to file the motion and get a hearing date as soon as possible to prevent further injury to the Property of the bankruptcy estate in addition to protecting the health and safety of those persons occupying the Property.

8.          In my opinion, the situation at the Property has grown so dire that emergency court intervention is required so the Property and the tenants of the Property do not suffer and\or risk further injury or harm.

          I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

          Executed this 9$^{h}$ day of February, 2011, in Los Angeles, California.

                                        /s/ Michael N. Sofris

                                        _____
                                        Michael N. Sofris

Motion To Use Cash Collateral

000011

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Exhibit 1

27

28

Motion To Use Cash Collateral

000012

B6A (Official Form 6A) (12/07)

In re  __LAX Royal Airport Center, LP__          Case No. _____
                    Debtor                                                    (If known)

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a co-tenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C — Property Claimed as Exempt.

| DESCRIPTION AND LOCATION OF PROPERTY | NATURE OF DEBTOR'S INTEREST IN PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION | AMOUNT OF SECURED CLAIM |
|---|---|---|---|---|
| Commercial Real Estate  5933 W. Century Blvd  Los Angeles, Ca  90045 | Fee Simple | | 16,000,000.00 | ~~18,000,000.00~~  8,000,000.00 |
| | | | | |

Total ➤ | 16,000,000.00

(Report also on Summary of Schedules )

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Exhibit 2

27

28

Motion To Use Cash Collateral

000014

**Subject:** Fwd: Cancellation - Security Services Royal Airport
**From:** Irene Chang <IreneChang@changandassociates.com>
**Date:** Tue, 8 Feb 2011 12:40:26 -0800
**To:** "Michael N. Sofris" <filmlawyer@aol.com>

Hi Michael

Please see below for cancellation notice from security company which they sent yesterday. Thanks.

---------- Forwarded message ----------
From: **Keith Dove** <kdove@americanguardservices.com>
Date: Mon, Feb 7, 2011 at 4:27 PM
Subject: Cancellation - Security Services Royal Airport
To: Irene Chang <irenechang@changandassociates.com>
Cc: Sherine Assal <sherine@americanguardservices.com>, "Assal, Sherif" <sherif@americanguardservices.com>, "Ruben, Wayne" <WRuben@szerlip.com>, Pete Nguyen <pete@americanguardservices.com>, "Melara, elmer" <emelara@americanguardservices.com>, dispatch@americanguardservices.com, "Ojeda, Jessy" <jojeda@americanguardservices.com>

Irene – Sherine Assal has directed security services for Royal Airport be canceled for non-payment effective 7pm PST on 2-7-2011.

I am sorry things have come to this, but we cannot continue providing service and not getting paid.

Respectfully,

Keith A. Dove
American Guard Services, Inc.
Risk Manager
1299 E. Artesia Blvd., Suite 200,
Carson CA 90746
kdove@americanguardservices.com
Tel: 424-213-4000
EFax: 424-213-4178

Cell: 714-363-1670

000015

**Current Threat Advisory - MARSEC Level 1**

*American Guard Services - Setting Tomorrow's Standards* - **Today**

Disclaimer:  This e-mail is intended only for the person addressed. It may contain confidential information, SSI (Security Sensitive Information), Law Enforcement and/or privileged material. If you receive this in error, please notify the sender immediately and delete the information from your computer. Please do not copy or use it for any purpose nor disclose its contents to any other person.

--
Irene Chang l Real Estate Manager
LAX Royal Airport Center, LP
5933 West Century Blvd. l Suite 618
Los Angeles l CA l 90045
Tel: 310.641.5007 l Fax: 310.641.3055
IreneChang@ChangandAssociates.com

000016

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Exhibit 3

27

_____

28

Motion To Use Cash Collateral

000017

# EXHIBIT A-CASH COLLATERAL STIPULATION

Debtor LAX Royal Airport Center LP

Case No. USBC Case No. 11-12333-BB

| CATEGORY (ITEMIZED EXPENSES): | CURRENT MONTHLY BALANCE | DESCRIPTION |
|---|---|---|
| AFCO Insurance | $6,352 | Earthquake Ins. |
| Traveler's Insurance | $3,500.00 | Commercial Bldg. Insurance |
| American Bldg. Maintenance | $ 9,500.00 | Janitorial Service |
| American Guard Services | $ 9,072.00 | Building Security |
| Amtech Elevator Service | $2,850.00 | Elevator Service |
| AT&T Telephone | $ 800.00 | Telephone Service |
| Athens Services | $ 636.61 | Waste Services |
| Critical Environments | $ 800.00 | Landscaping |
| Engineering Services Co. | $ 750.00 | Bldg. Engineer |
| Flower Ladies | $ 120.00 | Reception Service-flower sales |
| Greenline Products | $1,500.00 | Janitorial Supplies |
| Koat Airport Associates | $23,250.00 | Land Lease Payment |
| LADWP | $28,500.00 | Power and Water |
| Orkin, Inc. | $250.00 | Pest Control |
| Simon Z. Wang, CPA | $1,000.00 | Accounting |
| Tri-Chem Technology | $206.00 | Water Treatment |
| Siemens Industry | $293.00 | Air Conditioning Service |
| Building Operation and Management | $25,000.00 | Rental Offices/Building Management |
| Property Taxes | $20,764.75 | Property Taxes |
| TOTAL EXPENSES: | $135,144 | |

000018

| In re:<br>LAX Royal Airport Center, LP<br><div align="right">Debtor(s).</div> | CHAPTER 11<br><br>CASE NUMBER 11-12333-BB |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

468 N. Camden Drive, Suite 200, Beverly Hills, California 90210

A true and correct copy of the foregoing document described **Emergency Motion For Use Of Cash Collateral; Memorandum of Points and Authorities; and Declaration(s) of Irene Chang and Michael N. Sofris In Support Thereof** (i)will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On 02\09\2011 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Russell Clementson on behalf of U.S. Trustee United States Trustee (LA)
russell.clementson@usdoj.govHal M Mersel on behalf of Creditor MSCI 2006-IQ11 West Century Limited Partnership mark.mersel@bryancave.com Michael N Sofris on behalf of Debtor LAX Royal Airport Center, LP michael@sofris.com United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On 02\09\2011 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

*The Honorable Sheri Bluebond, US Bankruptcy Court, 255 E. Temple Street, Ste 1482, Los Angeles,, Ca 90012*

☒ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 11\09\2010 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 02\09\2011 | Michael N. Sofris | /s/ Michael N. Sofris |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                 **F 9013-3.1**
000019

| In re:<br>LAX Royal Airport Center, LP | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 11-12333-BB |

**Additional Service Information**

KOAR International-Airport Center Investment Partnership
C/o Cox Castle & Nicholson
2049 Century Park East
Suite 2800
Los Angeles, CA 90067

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9013-3.1**

000020