**BRYAN CAVE LLP**
H. Mark Mersel, California Bar No. 130382
Sheri Kanesaka, California Bar No. 240053
3161 Michelson Drive, Suite 1500
Irvine, CA 92612
Telephone:  (949) 223-7000
Facsimile:  (949) 223-7100
E-mail: mark.mersel@bryancave.com
    sheri.kanesaka@bryancave.com

Attorneys for Secured Creditor
MSCI 2006-IQ11 West Century Limited Partnership

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>LAX ROYAL AIRPORT CENTER, LP,<br><br>Debtor. | Case No. 2:11-bk-12333 - BB<br><br>Chapter 11<br><br>**SECURED CREDITOR'S OPPOSITION TO DEBTOR'S MOTION FOR USE OF ITS CASH COLLATERAL**<br><br>[*Declaration of D'Juan O'Donald filed concurrently herewith*]<br><br>Date:  February 15, 2011<br>Time:  11:00 a.m.<br>Place:  Ctrm 1475<br><br>Honorable Sheri Bluebond |

**TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE, AND ALL PARTIES IN INTEREST:**

Secured Creditor MSCI 2006-IQ11 West Century Limited Partnership ("Lender") respectfully submits its opposition ("Opposition") to LAX Royal Airport Center, LP's ("Debtor") Emergency Motion for Use of Its Cash Collateral ("Motion").

## I. INTRODUCTION.

Contrary to the Debtor's assertions, the Lender has been actively attempting to enter into a reasonable stipulation for the Debtor's use of its cash collateral. However, as explained below, the Debtor is acting in bad faith. The Debtor's proposed budget improperly inflates expenses and diverts funds to purposely manipulate the Debtor's monthly operating cash flow, thus, leaving the Debtor with no excess amounts that can be paid to the Lender. In addition, the Debtor is operated and managed by insiders who are seeking more than double the amount of compensation they received last year. The Debtor also has not made any payments to Lender under its $10 million loan for over one year. Furthermore, Lender believes that its claim is undersecured as to the real property.

Thus, the Court should deny the Debtor's use of the Lender's cash collateral, or in the alternative, require the Debtor to use the funds for the reasonable and necessary expenses as offered by the Lender, with all excess amounts to be disbursed to the Lender.

## II. RELEVANT BACKGROUND.

### A. The Secured Loan.

1. On or about April 20, 2005, the Debtor borrowed the principal amount of $10,000,000.00 ("Loan") from Morgan Stanley Mortgage Capital, Inc. ("Original Lender"). (*See* Declaration of D'Juan O'Donald filed concurrently herewith ("O'Donald Decl."), ¶ 4.)

2. The Loan is evidenced by, among other things, a promissory note ("Note") dated April 20, 2005, and executed by LAX Royal Airport Center, LLC, a California limited liability company and the general partner of the Debtor ("LAX GP"). (*Id.* at ¶ 5.) Robert Chang signed on behalf of LAX GP as its manager. (*Id.*)

3. The Note is secured by, among other things, that certain Leasehold Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing ("Deed of Trust") dated April 20, 2005, executed by Robert Chang as the manager of LAX GP for the benefit of the Original Lender, and recorded against real property commonly known as 5933 West Century Boulevard, Los Angeles, California 90045-5471 ("Property"), in

1     the Los Angeles County Recorder's Office on April 21, 2005. (O'Donald Decl. ¶ 6.) The Note is also secured by, among other things, that certain Assignment of Leases and Rents ("Assignment") dated April 20, 2005, executed by Robert Chang as the manager of LAX GP for the benefit of the Original Lender, and recorded against the Property in the Los Angeles County Recorder's Office on April 21, 2005. (*Id.*)

       4.     Pursuant to Sections 2.1 and 3.1 of the Assignment, the Debtor was allowed to collect and receive the rents generated by the Property and hold them for the benefit of the Original Lender. (*Id.* at ¶ 7.) However, upon the Debtor's default, the Debtor's license to collect and receive such rents is automatically revoked, and the Original Lender is immediately entitled to possession of all rents regardless of whether it takes control of the Property. (*Id.*)

       5.     Original Lender perfected its security interest in the Debtor's personal property by duly recording a UCC-1 Financing Statements in the California Secretary of State's office ("UCC Filing"). (*Id.* at ¶ 8.)

       6.     On or about July 14, 2005, the Debtor entered into a loan modification agreement with the Original Lender ("First Loan Modification"), dated July 14, 2005, and recorded in the Los Angeles County Recorder's Office on August 10, 2005. (*Id.* at ¶ 9.) In addition, concurrently with the First Loan Modification, Robert Chang, Susan Chang, Irene Chang, Johnson Chang, Jason Chang and Amy Xia Mi Fan (the "Insiders") executed and delivered to the Original Lender a certain Guaranty Agreement ("Guaranty"), whereby the Insiders guaranteed payment in full of the Debtor's obligations under the Notes to the Original Lender. (*Id.*)

       7.     On or about May 8, 2006, the Debtor entered into a second loan modification with the Original Lender ("Second Loan Modification"), dated May 8, 2006, and recorded in the Los Angeles County Recorder's Office on May 17, 2006. (*Id.* at ¶ 10.)

       8.     The Second Loan Modification provides that the Debtor and the Original Lender shall amend the Note pursuant to an Amended and Restated Promissory Note

1  (Note A) for the principal amount of $7 million ("Amended Note"), and a certain Promissory Note (Note B) for the original principal amount of $3 million (the "Second Note," and collectively with the Note and the Amended Note, the "Notes") (collectively, with all other loan documents, the "Loan Documents").  (O'Donald Decl. ¶ 11.)

9. On or about June 23, 2006, Original Lender assigned its interests in the Loan Documents (the "LaSalle Assignment") to LaSalle Bank National Association, as Trustee for Morgan Stanley Capital I Inc., Commercial Mortgage Pass-Through Certificates, Series 2006-1Q11 ("LaSalle Bank").  (*Id.* at ¶ 12.)

10. In connection with the LaSalle Assignment, a UCC-1 Financing Statement was filed in the in the California Secretary of State's office ("LaSalle UCC Statement"). (*Id.* at ¶ 13.)

11. On or about September 2010, LaSalle Bank assigned its interests in the Loan Documents to Lender ("Lender Assignment").  (*Id.* at ¶ 14.)

12. The Lender Assignment is also evidenced by an assignment UCC-1 Financing Statement ("Lender UCC Statement").  (*Id.* at ¶ 15.)

**B.    The Defaults.**

13. On or about January 2010, the Debtor defaulted under the Loan when it failed to pay the monthly amounts due and owing.  (*Id.* at ¶ 16.)

14. The Debtor has been in default under the Loan Documents since January, 2010 as a result of its failure to pay the monthly interest payments and other charges due under the Note, beginning with the payment due on January 2010.  (*Id.* at ¶ 17.)

15. As a result of the above-referenced defaults, Lender has exercised its right to accelerate the Loan.  As of December 6, 2010, the unpaid principal balance of the Note was $6,665,176.14, and the other delinquencies under the Note, including late charges, and other charges due under the Loan Documents totaled in excess of $791,902.00.  (*Id.* at ¶ 18.)  The amounts in default have and will continue to accrue.  (*Id.*)

16. Lender and its predecessors-in-interest have performed all conditions and obligations on their part under the Loan Documents.  (*Id.* at ¶ 19.)

### C. The Bankruptcy Case and Negotiations Regarding Cash Collateral.

17. The Debtor filed a Chapter 11 bankruptcy case as a debtor-in-possession, single asset real estate entity on January 19, 2011. (Doc. No. 1.)

18. On January 20, 2011, Lender filed its Notice of Post-Petition Perfection of Security Interest and Absolute Assignment of Rents, as well as its objection to the Debtor's use of any of Lender's cash collateral derived from the Property. (Doc. No. 4.)

19. Lender is informed and believes that the current gross monthly rents ("Cash Collateral") for the Property are at least $132,000.00 and that these rents more than cover the operating expenses of the Property. (O'Donald Decl. ¶ 22.) Accordingly, the Debtor has collected and continues to collect excess rents and is not paying any of the monthly debt service owed to the Lender. (*Id.*) Accordingly, the Lender has full recourse to recover the excess rents that were wrongfully misappropriated and not applied to the indebtedness under the Notes. (*Id.*)

20. The Lender has been attempting to enter into a cash collateral stipulation with the Debtor, but has been unable to do so because the budget proposed by the Debtor appears to significantly inflate the historical expenses of the Property. (*Id.* at ¶ 23.)

21. Pursuant to the Debtor's obligations under the Loan Documents, the Debtor provided financials, including yearly Profit & Loss statements. (*Id.* at ¶ 24.)

22. The P&L Statement provides, among others, the yearly expenses as:

| | |
|---|---|
| Janitorial service | $ 63,767.93 |
| Janitorial supplies | $ 13,759.63 |
| Elevator service | $ 29,539.73 |
| Engineering service | $ 3,516.79 |
| Building security | $ 80,190.00 |
| Water | $251,724.88 |
| Power | $ 41,880.63 |
| Mgmt/salary | $139,935.61 |
| Property taxes | $138,759.14 (*Id.* at ¶ 25.) |

23. The Debtor proposed a budget in connection with its discussions regarding a stipulation for the use of the Lender's Cash Collateral ("Budget") that significantly inflated several of the expenses. (*Id.* at ¶ 26.) This manipulation results in a budget that reflects no excess cash flow that can be paid to the Lender. (*Id.*)

24. Lender recognizes the necessity of paying the ordinary expenses in order to maintain the Property and to protect the public and the Debtor. (O'Donald Decl. ¶ 27.) In fact, Lender proposed expenses based on those incurred in 2010 <u>plus</u> a 3% inflation increase ("Lender's Estimates"). (*Id.*) However, the Debtor refused to accept these amounts and refused to explain the discrepancies. (*Id.*)

25. The Lender's Estimates provides as follows, and more importantly, demonstrates that the Debtor has excess cash flows that can be use to make adequate protection payments to the Lender:

| Expenses: | Debtor's: | Lender's: | Purpose: |
|---|---|---|---|
| AFCO Insurance | $6,352 | $6,352.00 | Earthquake Ins. |
| Traveler's Insurance | $3,500.00 | $3,500.00 | Commercial Bldg. Insurance |
| American Bldg. Maintenance | $9,500.00 | $5,500.00 | Janitorial Service |
| American Guard Services | $9,072.00 | $7,000.00 | Building Security |
| Amtech Elevator Service | $2,850.00 | $2,500.00 | Elevator Service |
| AT&T Telephone | $800.00 | $800.00 | Telephone Service |
| Athens Services | $636.61 | $636.61 | Waste Services |
| Critical Environments | $800.00 | $800.00 | Landscaping |
| Engineering Services Co. | $750.00 | $300.00 | Bldg. Engineer |
| Flower Ladies | $120.00 | $0.00 | Reception Service-flower sales |
| Greenline Products | $1,500.00 | $1,200.00 | Janitorial Supplies |
| Koar Airport Associates | $23,250.00 | $23,250.00 | Land Lease Payment |
| LADWP | $28,500.00 | $25,200.00 | Power and Water |
| Orkin, Inc. | $250.00 | $250.00 | Pest Control |
| Simon Z. Wang, CPA | $1,000.00 | $1,000.00 | Accounting |
| Tri-Chem Technology | $206.00 | $206.00 | Water Treatment |
| Siemens Industry | $293.00 | $293.00 | Air Conditioning Service |
| Building Operation and Management | $25,000.00 | $12,000.00 | Rental Offices\Building Management |
| Property Taxes | $20,764.75 | $22,851.00 | Property Taxes |
| **TOTAL EXPENSES:** | $135,144 | **$113,638.61** | |
| Current Monthly Rental Income | $132,000.00 | $132,000.00 | |
| **TOTAL SURPLUS or DEFICIT** | <$3,144> | **$18,361.39** | |

(*Id.* at ¶ 28.)

26. Some of the expenses are inflated by more than 100%. The expenses and the differences are further noted as follows:

/ / /

/ / /

/ / /

| Expense | P&L Stmt 2010 Year | Expenses Based on 2010 Stmt Per Month | Debtor's Proposed Per Month | Difference Btw Real & New Expense Per Month | Increase in Percent |
|---|---|---|---|---|---|
| Janitorial services | $ 63,767.93 | $ 5,313.99 | $ 9,500.00 | $ 4,186.01 | **78.8%** |
| Janitorial supplies | $ 13,759.63 | $ 1,146.64 | $ 1,500.00 | $ 353.36 | **30.8%** |
| Elevator service | $ 29,539.73 | $ 2,461.64 | $ 2,850.00 | $ 388.36 | **15.78%** |
| Engineering service | $ 3,516.79 | $ 293.07 | $ 750.00 | $ 456.93 | **155.9%** |
| Building security | $ 80,190.00 | $ 6,682.50 | $ 9,072.00 | $ 2,389.50 | **35.76%** |
| Water & Power | $293,605.51 | $24,467.12 | $28,500.00 | $ 4,032.88 | **19.53%** |
| Mgmt/salary | $139,935.61 | $11,661.30 | $25,000.00 | $13,338.70 | **114.38%** |
| Property taxes | $138,759.14 | $11,563.26 | $20,764.75 | $ 9,201.49 | **79.58%** |

(O'Donald Decl. ¶ 29.)

27.    Lender has no objection to the Debtor's use of the Cash Collateral <u>to pay for the true cost of the necessary expenses to maintain and protect the Property; however, Lender objects to the use of the Cash Collateral for inflated expenses or to pay the principals of the Debtor and their family members while refusing to pay any amounts to the Lender for over one year.</u>  (*Id.* at ¶ 30.)

28.    Lender is informed and believes that Mr. Chang, the manager of the Debtor's general partner, only employs family members to operate the Property.  (*Id.* at ¶ 31.)  As such, it is highly suspect that the "management/salary" expense noted in the Debtor's Budget <u>more than doubled</u> from the amount incurred in 2010.  (*Id.*)

29.    Lender is also informed and believes that Irene Chang, the operations manager for the Debtor, and one of the declarants in support of the Motion, is a relative of Mr. Chang and thus, an insider of the Debtor.  (*Id.* at ¶ 32.)  Lender is further informed

and believes that the other employees of the Debtor and/or property managers are also relatives of Mr. Chang and/or consist of the Insiders. (O'Donald Decl. ¶ 32.) As such, no management fees should be paid until the proper notice and opportunity for a hearing to object to insider compensation is set with the Court. (*Id.*)

30. Furthermore, the Debtor's Motion contends that insurance and other costs need to be paid. (*Id.* at ¶ 33.) Insurance and property taxes are paid by the Lender as part of its impound account. (*Id.*) Any amounts allocated by the Debtor in its Budget for these expenses should be disbursed to the Lender on a monthly basis. (*Id.*)

31. The inflated expenses and the Debtor's refusal to discuss or substantiate them demonstrates the Debtor's bad faith and the need for the appointment of a Chapter 11 trustee. (*Id.* at ¶ 34.)

32. In addition, pursuant to a recent title report, there are at least four mechanics' liens on the Property totaling approximately $83,869.24. (*Id.* at ¶ 35.)

33. Lender is further informed and believes that its secured claim as to the Property is undersecured. (*Id.* at ¶ 36.)

### III. ARGUMENT.

Pursuant to Section 363(c)(2)(B), a debtor may not use, sell or lease cash collateral unless (a) each entity that has interests in the cash collateral consents, or (2) after notice and a hearing, the court authorizes such use. 11 U.S.C. § 363. Pursuant to Section 363(e), the court shall prohibit a debtor's use, sale or lease of cash collateral "as is necessary to provide adequate protection of such interest." *Id.*

In the case at hand, Lender has proposed a reasonable and fair budget based on the Debtor's 2010 incurred expenses. The Cash Collateral generated by the Property more than covers the reasonable operating expenses needed by the Debtor and provides approximately $18,361.39 of excess cash flow per month. The Debtor is in default since January 2010, and has not paid any amounts to Lender under the Notes. Pursuant to the Loan Documents, all Cash Collateral belongs to the Lender. Accordingly, the Lender has full recourse to recover the excess rents that are wrongfully misappropriated and not

1  applied to the indebtedness under the Notes.  The Debtor should disburse all excess
2  amounts to the Lender on a monthly basis.
3       In addition, the Lender attempted to resolve the issues via stipulation.  However,
4  when Lender questioned the Debtor regarding the discrepancies, including expenses that
5  are inflated over 100%, the Debtor immediately filed the Motion.  Contrary to the
6  Debtor's allegations that the Lender refused to enter into a stipulation, Lender in fact,
7  offered to allow the Debtor to use the Cash Collateral to pay for the accurate expenses.
8  The Debtor refused to enter into a reasonable stipulation or provide additional
9  information to substantiate the inflated expenses.
10      Moreover, the Lender is informed and believes that the management expense listed
11  by the Debtor is for the benefit of the Insiders of the Debtor.  Therefore, such amounts,
12  especially as proposed by the Debtor (with an inflation of over 100% from last year),
13  should not be paid until Lender has an opportunity to review and oppose any insider
14  compensation application.  Furthermore, the Lender is not adequately protected because
15  (1) the Debtor and the Insiders' behavior pose a real threat that the Cash Collateral will be
16  diverted for improper purposes, (2) Lender believes that it is undersecured as to the
17  Property, (3) the Debtor has not paid any amounts due and owing under the Notes since
18  January 2010, and continues to refuse to pay any amounts to the Lender, and (4) the
19  Debtor may further encumber the Property as evidenced by the existing mechanics' liens.
20  / / /
21  / / /
22  / / /
23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

787013.2                              9    OPPOSITION TO MTN FOR USE OF CASH COLLATERAL

## IV. CONCLUSION.

For all of the reasons noted above, Lender respectfully requests that the Court: (1) deny the Debtor's use of Lender's Cash Collateral; (2) in the alternative, (a) allow the Debtor to use the Cash Collateral only for the properly adjusted expenses as proposed by the Lender, (b) direct the Debtor to withhold disbursing any funds to the Insiders pending insider compensation applications, and (c) disburse the insurance amounts, property tax amounts, and any excess cash flows to the Lender on a monthly basis; and (3) for such other and further relief as is just and necessary.

Date: February 11, 2011.    BRYAN CAVE LLP

By: /s/ *H. Mark Mersel*
    H. Mark Mersel
Attorneys for Secured Creditor
MSCI 2006-IQ11 West Century Limited Partnership

NOTE: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
120 Broadway, Suite 300, Santa Monica, CA 90401

A true and correct copy of the foregoing document described as **SECURED CREDITOR'S OPPOSITION TO DEBTOR'S EMERGENCY MOTION FOR USE OF ITS CASH COLLATERAL** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On *February 11, 2011*, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

ustpregion16.la.ecf@usdoj.gov    russell.clementson@usdoj.gov    rorlik@coxcastle.com
michael@sofris.com

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On *February 11, 2011*, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**VIA REGULAR MAIL**

| **Debtor** | Russell Clementson | Randy P Orlik |
|---|---|---|
| LAX Royal Airport Center, LP | 725 S Figueroa Ste 2600 | 2049 Century Park East Ste 2800 |
| 5933 W. Century Blvd. | Los Angeles, CA 90017 | Los Angeles, CA 90067-3284 |
| Los Angeles, Ca 90045 | | |

☐ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on *February 11, 2011*, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

**[Via Personal Delivery]**
Hon. Sheri Bluebond (LA)
255 E. Temple Street, Suite 1482
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| February 11, 2011 | Sheri Kanesaka | /s/ Sheri Kanesaka |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010                                                                                                              **F 9013-3.1.PROOF.SERVICE**